# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,            )<br>)<br>Plaintiff,            )<br>)<br>v.            )<br>)<br>JAISANKAR MARIMUTHU,            )<br>CHOCKALINGAM RAMANATHAN,            )<br>and THIRUGNANAM RAMANATHAN,            )<br>)<br>Defendants.            ) | CASE NO. 8:07CV94<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on Defendant Thirugnanam Ramanathan's Motion to Dismiss (Filing No. 23) and Motion for Permission for Oral Argument (Filing No. 26). For the reasons stated below, the Motions are denied.

On March 12, 2007, the Securities and Exchange Commission ("SEC") filed a Complaint against Jaisankar Marimuthu, Chockalingam Ramanathan, and Thirugnanam Ramanathan alleging violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and seeking injunctive and other relief (Filing No. 1). The Complaint alleges that the Defendants opened securities brokerage accounts at several U.S.-based broker-dealers including TD Ameritrade, E*Trade, and Charles Schwab & Co., Inc. Using these accounts, the Defendants allegedly purchased thinly traded stocks in their own name. After purchasing the stocks, the Defendants allegedly used stolen usernames and passwords to access brokerage accounts of unwitting investors at U.S.-based broker-dealers, including TD Ameritrade. Using the stolen accounts, the Defendants allegedly placed unauthorized buy orders at above-market prices. After the unauthorized buy orders were

placed, the Defendants allegedly sold their stocks at above-market prices realizing substantial profits. (Filing No.1).

Mr. Ramanathan filed a Motion to Dismiss asserting that (1) the Court lacks subject matter jurisdiction over him because of the protections provided by the doctrine of speciality and the treaties of the United States; (2) the Court lacks personal jurisdiction; and (3) venue is improper in this forum (Filing No. 23). The parties have stipulated to the following facts for the limited purpose of these motions:

1. Ramanathan is an Indian national and resident of the country of Malaysia.

2. On January 18, 2007, Ramanthan was indicted by the United States. (U.S. Dist. Ct., Dist. of Nebraska, 8:07-cr-00030).

3. On January 26, 2007, Ramanathan was arrested by the legal authorities in Hong Kong. At the time of his arrest, Ramanthan was a native of Chennai, India, and resident of Malaysia. Ramanthan was visiting Hong Kong under an Indian passport.

4. Ramanathan remained in the custody of Hong Kong authorities from January 26, 2007, through May 25, 2007, at which time he was surrendered into the custody of the United States by Hong Kong authorities at the request of the United States authorities and transported by the United States to Omaha, Nebraska.

5. Since his arrival in Omaha, Nebraska, Ramanathan has remained in the custody of the United States while incarcerated at the Douglas County Jail, in Omaha, Nebraska.

6. On June 7, 2007, Ramanathan was served with a summons in these proceedings while in the custody of the United States pursuant to the extradition proceedings conducted in Hong Kong in May 2007 referred to in paragraph 4 above.

(Filing No. 25.)

**ANALYSIS**

**Subject Matter Jurisdiction**

The Securities Act and the Exchange Act ("the Acts") both contain specific grants of subject matter jurisdiction to the District Courts of the Untied States to adjudicate cases brought by the Commission for violations of securities law. 15 U.S.C. §77v(a) and 15 U.S.C. §78aa. While the Acts are silent as to their extraterritorial application, courts recognize that subject matter jurisdiction may extend to claims involving transnational securities frauds. *S.E.C. v. Berger*, 322 F.3d 187, 192 (2d Cir. 2003). In determining whether it has subject matter jurisdiction in such cases, the court "must seek to determine whether Congress would have wished the precious resources of the United States courts and law enforcement agencies to be devoted to them rather than [to] leave the problem to foreign countries." *Id.* (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir.1975)).

In applying this standard, courts have consistently looked at two factors: (1) whether the wrongful conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial effect in the United States or upon United States citizens. *Id.*; *see, e.g., Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 125 (2d Cir.1998); *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 121-22 (2d Cir.1995); *Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1045 (2d Cir.1983). These two factors are referred to respectively as the "conduct test" and the "effects test." *Berger,* 322 F.3d at 193.

In this case, Mr. Ramanathan's alleged activities had a substantial effect in the United States and upon United States citizens, meeting the effects test. Mr. Ramanathan allegedly opened accounts with United States broker-dealers. Without authorization, he allegedly accessed broker-dealer accounts held by United States broker-dealers and manipulated the price and volume of stocks sales on United States exchanges. (Filing No. 1).

Mr. Ramanathan does not deny that the requirements of *Berger* have been met, but instead asserts that this Court lacks subject matter jurisdiction because the extradition order did not include civil actions; consequently, he contends that this Court lacks jurisdiction under the doctrine of speciality.[1] The doctrine of specialty limits the offenses for which a fugitive may be tried by the receiving government. *United States v. Rauscher*, 119 U.S. 407, 422-23 (1886). The doctrine, which provides that a defendant may only be tried for the offense for which he was surrendered by the asylum country, seeks to avoid indiscriminate prosecution by receiving countries. *United States v. Zackery*, 494 F.3d 644, 652 n.2 (8th Cir. 2007) (quoting *Leighnor v. Turner*, 884 F.2d 385, 389 (8th Cir. 1989)), petition for cert. filed, __ U.S.L.W. __ (U.S. Dec. 4, 2007) (No. 07-8034).

"The protection of the rule of specialty exists only to the extent that the surrendering country wishes." *S.E.C. v. Eurobond Exchange, Ltd.*, 13 F.3d 1334, 1337 (9th Cir. 1994) (citing *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.) (per curiam), cert. denied, 479 U.S. 1009 (1986)). In *Eurobond Exchange*, the office in the Swiss government

---

[1] The Court denied a similar motion regarding the doctrine of speciality advanced by Mr. Ramanathan in his criminal case. Order Adopting the Magistrate's Report and Recommendation, *United States v. Jaisankar Marimuthu, Chockalingam Ramanathan and Thirugnanam Ramanathan*, Case No. 8:07-cr-30 (Neb. March 5, 2008) (Filing No. 116).

responsible for international extradition cases represented to the United States Department of Justice that the rule of specialty contained in its extradition treaty did not prohibit a civil enforcement action filed by the SEC.  The *Eurobond Exchange* court found that because the extraditing country affirmatively stated that the treaty did not apply to the civil matter, "as a matter of international comity a trial in this civil matter will not offend the Swiss." *Eurobond Exchange*, 13 F.3d at 1337 (holding that the doctrine of speciality did not apply to a civil action).

The office of the Hong Kong government responsible for international extradition cases has provided an opinion to the U.S. Department of Justice that the Speciality Clause in the extradition treaty between the two countries is not applicable to civil proceedings. (Filing No. 29, Exhibit A, Letter from Elizabeth Liu, Hong Kong Department of Justice.) Consequently, this civil action would not offend the Hong Kong government.  I find that the doctrine of speciality does not prohibit this Court's jurisdiction in this matter.

**Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995).  For the purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).  While plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a

preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Id.* (citing *CutCo Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)).

The Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment.[2] 15 U.S.C. §78aa; *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996). Therefore, Mr. Ramanathan's personal jurisdiction challenge is tested against due process standards.

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the maintenance of a suit against the defendant does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The non-resident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In *Unifund SAL*, the Second Circuit found a direct and unmistakably foreseeable effect within the United States when the defendant is alleged to have traded, on the basis of inside information, options of a United States corporation listed exclusively on a United

---

[2] Securities Act of 1933 permits the same exercise of personal jurisdiction. 15 U.S.C. §77v(a); *see, Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996)

6

States stock exchange.  *Unifund SAL*, 910 F.2d at 1033.  "That activity created the near certainty that United States shareholders, who could reasonably be expected to hold [the] securities, would be adversely affected."  *Id.*  Similarly, in this case not only did Mr. Ramanathan allegedly manipulate stocks of United States companies on an United States exchange, he allegedly did so using investment accounts he voluntarily opened with United States broker-dealers.  Moreover, the accounts that Mr. Ramanathan allegedly accessed illegally were held by U.S. broker-dealers.  These factual allegations, contained in the Complaint, establish a prima facie case that this Court has personal jurisdiction over Mr. Ramanathan.

**Venue**

Mr. Ramanathan argues that venue is improper based on 28 U.S.C. § 1391. However, the Exchange Act contains its own venue provision, providing that venue is proper "in the district wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business . . . " 15 U.S.C. § 78aa.  The Complaint alleges that Mr. Ramanathan opened investment accounts with TD Ameritrade, which is headquartered in Omaha, Nebraska.  He used these accounts to purchase and sell thousands of shares of stock.  These acts are significant parts of the scheme and, thus, satisfy 15 U.S.C. §77aa.[3]

---

[3] Additionally, the Court notes that the case for venue is even stronger if it applied the co-conspirator venue theory.  The theory provides that "in multi-defendant and multi-forum securities fraud actions any act committed material to and in furtherance of an alleged fraudulent scheme will satisfy the venue requirement of the Exchange Act as to all defendants wherever the defendants are found." *S.E.C. v. Nat'l Student Marketing Corp.*, 360 F. Supp. 284, 292 (D.D.C.1973); *see also S.E.C. v. Diversified Indus.*, 465 F. Supp. 104, 111 (D.D.C. 1979) ("The co-conspirator venue theory, in essence, provides: '[A]ny allegation of a securities act violation is sufficient for venue purposes even as to a

Based on the clearly defined statutes and case law cited above, I find that oral argument in this matter is not necessary and deny Mr. Ramanathan's Motion for Permission for Oral Argument.  NECivR 7.1(d).

Accordingly,

IT IS ORDERED:

1. The Plaintiff's Motion to Dismiss, Filing No. 23, is denied; and

2. The Plaintiff's Motion for Permission for Oral Argument, Filing No. 26, is denied.


DATED this 17th day of March, 2008.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

---

defendant who did not commit an act within the district if that defendant is in league with a defendant who did act within the district.' ") (internal quotation omitted).  Not only would Mr. Ramanathan's acts in this forum be considered, but also the acts of his co-conspirators.